IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

_____

| | |
|---|---|
| EDGAR TIEDEMANN, | ) **MEMORANDUM DECISION & ORDER** |
| | ) **GRANTING MOTION TO DISMISS** |
| Petitioner, | ) **HABEAS PETITION** |
| | ) |
| v. | ) Case No. 2:10-CV-803 CW |
| | ) |
| ALFRED BIGELOW, | ) District Judge Clark Waddoups |
| | ) |
| Respondent. | ) |

_____

Petitioner, Edgar Tiedemann, an inmate at Utah State Prison, petitions for habeas corpus relief.[1]  The State moves the Court to dismiss the petition.  The Court grants the State's motion.

### BACKGROUND

Petitioner was charged with two counts of murder and one count of attempted murder.  The state trial court denied his motions to (1) dismiss the charges against him, because evidence had been destroyed, violating his due-process rights; and (2) suppress his confession to police during a taped interview at the police station, because it violated *Miranda v Arizona*[2] and was otherwise involuntary.  On interlocutory appeal, the Utah Supreme Court affirmed the *Miranda* issue, but reversed and remanded regarding the destroyed evidence.[3]  On remand, following the

_____

[1] *See* 28 U.S.C.S. § 2254 (2012).

[2] 384 U.S. 436 (1966).

[3] *State v. Tiedemann*, 2007 UT 49.

supreme court's direction on analyzing the destroyed-evidence question, the trial court determined the dismissal of charges on that basis was inappropriate.

Petitioner was convicted on all three counts.  He was sentenced to two terms of five years to life and one term of one-to-fifteen years.  His conviction was upheld in a Utah Court of Appeals opinion.[4]  There, he argued that the trial court should have struck a juror for cause and certain pre-*Miranda* statements should have been excluded.[5]  Petitioner did not file a certiorari petition in the Utah Supreme Court.

Here, Petitioner raises the following issues:  (1) a *Miranda* violation occurred when a portion of his interrogation was not recorded; (2) a juror should have been excluded for cause; (3) his request for an attorney was ignored; (4) ineffective assistance of counsel; (5) the destruction of evidence violated his due-process rights; and (6) his confession was involuntary because he (a) did not understand something a detective said and (b) was intoxicated.

The State responded to the petition with a motion to dismiss.  It argues that issues one through four are procedurally defaulted, and issues five and six do not withstand the application of the rigorous federal habeas standard of review.

---

[4]*State v. Tiedemann*, 2009 UT App 273U.

[5]*Id.*, ¶¶ 2, 5.

After comprehensively evaluating the State's motion and the fifteen letters of responsive arguments and information Petitioner has filed since the State's dismissal motion was filed, the Court agrees with the State as to issues one through four and six.  However, the Court concludes that issue five is also procedurally defaulted.

**ANALYSIS**

**I. Procedural Default**

In general, before Petitioner may seek review of a Utah conviction in federal court, he must exhaust all remedies in the Utah courts.[6]  This means Petitioner must properly present to the highest available Utah court the federal constitutional issues on which he seeks relief.[7]  Here, Petitioner did not present certain issues to the highest court available, the Utah Supreme Court.

The United States Supreme Court has said that when a petitioner has not exhausted "'his state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred' the claims are considered exhausted

---

[6]*See* 28 U.S.C.S. § 2254(b) & (c) (2012); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *Knapp v. Henderson*, No. 97-1188, 1998 WL 778774, at *2 (10th Cir. Nov. 9, 1998) (unpublished).

[7]*See Picard*, 404 U.S. at 275-76.

3

and procedurally defaulted for purposes of federal habeas relief."[8]

Petitioner raises the following issues that are now ineligible to be exhausted in the Utah courts: (1) a *Miranda* violation occurred when a portion of his interrogation was not recorded; (2) a juror should have been excluded for cause; (3) his request for an attorney was ignored; (4) he received ineffective assistance of counsel; and (5) his federal due-process rights were violated when evidence was destroyed before his trial.[9]

Utah's Post-Conviction Remedies Act (PCRA) states, "A person is not eligible for relief under this chapter upon any ground that . . . could have been but was not raised at trial or on appeal."[10]   The grounds Petitioner presents could have been brought on appeal and are therefore disqualified for state post-

---

[8]*Thomas v. Gibson*, 218 F.3d 1213, 1221 (10th Cir. 2000) (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)).

[9]Regarding issue five as to the destruction of evidence before trial, Petitioner raised that federal and state due-process issue on interlocutory appeal to the Utah Supreme Court before his trial.   *State v. Tiedemann*, 2007 UT 49.   The supreme court determined federal constitutional analysis unnecessary because of its treatment of the issue under the Utah Constitution. *See id.* ¶¶ 30-46.   The supreme court took the opportunity to detail the state constitutional analysis to be applied in this case, then remanded to the trial court to apply the law to the facts of the case.   *See id*.   The trial court did so and in the process again rejected Petitioner's argument that his due-process rights had been breached in this situation.   Petitioner did not appeal that determination, nor the failure to apply federal constitutional law (with a potentially more favorable result), and therefore failed to exhaust the issue, which is now procedurally defaulted, as explained here.

[10]Utah Code Ann. § 78B-9-106(1) (2012); *cf. Hale v. Gibson*, 227 F.3d 1298, 1328 (10th Cir. 2000) ("Oklahoma bars collateral review of claims . . . that could have been raised on direct appeal but were not.   Accordingly, [petitioner] has defaulted his claim . . . .").

conviction relief now.  The Court therefore applies the doctrine
of "anticipatory procedural bar," which "'occurs when the federal
courts apply [a] procedural bar to . . . [a] claim [not fairly
presented to the state court] that would be procedurally barred
under state law if the petitioner returned to state court to
exhaust it.'"[11]  Petitioner's first five issues, listed above,
"are thus considered exhausted and procedurally defaulted for
purposes of habeas review."[12]

    "This court may not consider issues raised in a habeas
petition 'that have been defaulted in state court on an
independent and adequate procedural ground[] unless the
petitioner can demonstrate cause and prejudice or a fundamental
miscarriage of justice.'"[13]  However, Petitioner does not argue
cause and prejudice or a fundamental miscarriage of justice
justify his procedural default.

    In sum, the Court determines Petitioner properly raised
before the Utah Supreme Court none of the his first five issues
brought here.  Because under state law those questions no longer
qualify to be raised in Utah courts, the Court concludes that
they are technically exhausted, anticipatorily barred by state

---

[11]*Robinson v. Davis*, No. 11-1525, 2012 U.S. App. LEXIS 3020, at *9 (10th
Cir. Feb. 16, 2012) (unpublished) (alterations in original) (quoting *Anderson
v. Sirmons*, 476 F.3d 1131, 1140 n.7 (10th Cir. 2007) (quotations omitted)).

[12]*Id.* at *10.

[13]*Thomas*, 218 F.3d at 1221 (alteration omitted) (citation omitted).

procedural law, and procedurally defaulted in this federal habeas case.  Indeed, Petitioner has suggested neither cause and prejudice nor a fundamental miscarriage of justice excuse his default.

## II. *Miranda* Violation

### A.  Standard of Review

The standard of review to be applied in federal habeas cases is found in § 2254, of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), under which this habeas petition is filed.  It states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[14]

"Subsection (d)(1) governs claims of legal error while subsection (d)(2) governs claims of factual error."[15]

The Court's inquiry centers on whether the Utah Supreme Court's rejection of Petitioner's *Miranda* claim "was contrary to,

---

[14]28 U.S.C.S. § 2254(d) (2012).

[15]*House v Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008).

or involved an unreasonable application of, clearly established Federal law."[16]  This "'highly deferential standard'"[17] is "'difficult to meet,' because the purpose of AEDPA is to ensure that federal habeas relief functions as a '"guard against extreme malfunctions in the state criminal justice systems,"' and not as a means of error correction."[18]  The Court is not to determine whether the supreme court's decision was correct or whether this Court may have reached a different outcome.[19]  "The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited."[20] And, "[t]he petitioner carries the burden of proof."[21]

Under *Carey v. Musladin*,[22] the first step is determining whether clearly established federal law exists relevant to Petitioner's claims.[23]  Only after answering yes to that "threshold question" may the Court go on to "ask whether the

---

[16]28 U.S.C.S. § 2254(d)(1) (2012).

[17]*Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (citation omitted).

[18]*Greene v. Fisher*, 132 S. Ct. 38, 43-44 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment))).

[19]*See Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

[20]*Barefoot v. Estelle*, 463 U.S. 880, 887 (1983).

[21]*Cullen*, 131 S. Ct. at 1398.

[22]549 U.S. 70 (2006).

[23]*House*, 527 F.3d at 1017-18.

7

state court decision is either contrary to or an unreasonable application of such law."[24]

> [C]learly established [federal] law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.[25]

In deciding whether relevant clearly established federal law exists, this Court is not restricted by the state court's analysis.[26]

If this threshold is overcome, this Court may grant habeas relief only when the state court has "unreasonably applied the governing legal principle to the facts of the petitioner's case."[27]  This deferential standard does not let a federal habeas court issue a writ merely because it determines on its own that the state-court decision erroneously applied clearly established federal law.[28]  "'Rather that application must also be

---

[24]*Id.* at 1018.

[25]*Id.* at 1016.

[26]*See Bell v. Cone*, 543 U.S. 447, 455 (2005) ("Federal courts are not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation."); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) ("[A] state court need not even be aware of our precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'") (citation omitted).

[27]*Walker v. Gibson*, 228 F.3d 1217, 1225 (10th Cir. 2000) (citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)).

[28]*See id.*

unreasonable.'"[29]  Indeed, "'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'"[30]

This highly demanding standard was meant to pose a sizable obstacle to the habeas petitioner.[31]  Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings."[32]  It maintains power to issue the writ when no possibility exists that "fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents.  It goes no farther."[33]  To prevail in federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."[34]  It is against this backdrop that this Court now applies the standard of review to the circumstances of this case.

---

[29]*Id.* (quoting *Williams*, 529 U.S. at 411).

[30]*Harrington*, 131 S. Ct. at 785 (emphasis in original) (quoting *Williams*, 529 U.S. at 410).

[31]*Id.* at 786.

[32]*Id.* at 786 (citation omitted).

[33]*Id.*

[34]*Id.* at 786-87.

## B. Application of Standard of Review

Petitioner urges this Court to overturn the Utah Supreme Court's decision that his *Miranda* rights were not violated by admission at trial of Petitioner's statement to police. Petitioner argues that his statement was necessarily involuntary because he was intoxicated and did not understand something the police said.

Noting again that review is tightly circumscribed by the standard of review for federal habeas claims by state prisoners, this Court observes that the supreme court selected the correct governing legal principle with which to analyze the *Miranda* issue.[35]  It is, of course, *Miranda v. Arizona* itself.[36]  As required by the standard of review, the Court now dissects whether the supreme court's application of *Miranda* was reasonable.

In analyzing this issue under *Miranda*, the Utah Supreme Court explained:

> I. MOTION TO SUPPRESS THE CONFESSION
> ¶ 14 We first address whether the district court was correct in denying Tiedemann's request to suppress his confession.  Tiedemann argues that he never gave a voluntary waiver of his right to remain silent, but rather, that the police took advantage of his mental impairment to improperly evoke a waiver and confession from

---

[35]*Tiedemann*, 2007 UT 49, ¶¶ 13-29, 48-55.

[36]384 U.S. 436 (1966).

10

him.  Tiedemann also argues that, even if he
gave a valid initial waiver, he later
unambiguously raised his right to remain
silent, and the officers failed to honor that
request in violation of his due process
rights.

¶ 15 This court addressed the threshold
requirements for a valid waiver of *Miranda*
rights and a subsequent invocation of those
rights in *State v. Leyva*, 951 P.2d 738 (Utah
1997).  *Leyva* firmly established that "[t]he
questions of waiver of *Miranda* rights and of
postwaiver invocation of those rights are
entirely separate." *Id*. at 743.  We therefore
address Tiedemann's initial waiver and the
subsequent raising of his right to remain
silent separately.  If the initial waiver was
not valid, the statements must be suppressed.
If, however, the initial waiver was valid, we
must determine if Tiedemann later validly
invoked his right to remain silent.

*A. Tiedemann's Initial Waiver Was Valid*

¶ 16 With regard to the initial waiver
of *Miranda* rights, this court has noted, in
accordance with federal case law, that a
"'heavy burden' rests on law enforcement
officers 'to demonstrate that the defendant
knowingly and intelligently waived' his
*Miranda* rights." *Leyva*, 951 P.2d at 743
(quoting *Miranda v. Arizona,* 384 U.S. 436,
475, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966)).
The burden therefore rests on the State to
show that a suspect's waiver of *Miranda*
rights was clear and unambiguous, as well as
voluntary.

¶ 17 In this case, the interrogating
officers read Tiedemann his rights and asked
him if he understood them.  Tiedemann,
although appearing distant and with his head
lowered, answered in the affirmative.
Further, Tiedemann responded in the
affirmative to each of the following
questions: (1) "Do you understand that you
can stop this questioning at anytime?"  (2)
"If you cannot afford an attorney, we will
provide one for you. Do you understand that?"

11

and (3) "Do you still wish to speak to us at this
time?"

¶ 18 In its Memorandum Decision, the
district court concluded that the officers
did not use coercive tactics to gain the
*Miranda* rights waiver.  Having reviewed the
transcript and video of the interrogation, we
agree.  The officers did not use "false
friend" or "half truth" tactics. They made no
threats or promises.  The interrogation was
less than one hour in length.  The officers
did not deny any special requests by the
defendant.  We could not find a single
instance in which the officers mistreated
Tiedemann or acted unethically in any way.
Although Tiedemann was admittedly intoxicated
at the time and was later found to be
incompetent to stand trial, his mental
condition alone, absent some abuse by the
officers, is not enough to render his waiver
invalid. *See Colorado v. Connelly,* 479 U.S.
157, 167, 107 S. Ct. 515, 93 L. Ed.2d 473
(1986) ("[C]oercive police activity is a
necessary predicate to the finding that a
confession is not 'voluntary' within the
meaning of the Due Process Clause of the
Fourteenth Amendment."); *State v.
Rettenberger,* 1999 UT 80, ¶ 17, 984 P.2d 1009
("Although ... a determination of
involuntariness cannot be predicated solely
upon a defendant's mental state, his mental
state is relevant to the extent it made him
more susceptible to mentally coercive police
tactics." (internal quotation marks
omitted)).

¶ 19 Because Tiedemann's waiver was
clear and unambiguous, and because he was not
coerced in any way, we conclude that
Tiedemann effectively waived his *Miranda*
rights.[37]

The Court went on to say:

¶ 49 A defendant controls his right to
remain silent.  He may invoke it as to all

---

[37]*State v. Tiedemann*, 2007 UT 49, ¶¶ 14-19.

matters or only as to some.  He may choose to
discuss some topics while eschewing others.
By stating "I don't want to talk about it,"
Tiedemann clearly indicated a desire not to
talk about something.  The ambiguity lies in
the pronoun "it."  What did Tiedemann not
want to talk about?  Our reading of the
transcript leads us to conclude that, at a
minimum, Tiedemann did not want to talk about
"what happened to Suzie."  To us this much is
clear.  It is far from clear, however,
whether he intended to assert his right to
remain silent beyond this, and we believe the
officers were therefore entitled to seek
appropriate clarification.  But in seeking
that clarification, they were not entitled to
direct questions specifically to "what
happened to Suzie."

¶ 50 The transcript reads as follows
with respect to Tiedemann's first indication
that he wished to reassert in some measure
his right to remain silent:

RE (Detective Ron Edwards):

Okay, do you know why we're
going to talk to you?

ET (Edgar Tiedemann):

Ya.

RE: What are we going to talk
to you about?

ET: The murders out there.

RE: What murders?

ET: The murders out there at
West Valley.

RE: Who are they?

ET: Suzie, Chuck and Scotty.

RE: Whose Suzie?

13

ET: She's the woman I love.

RE: That you love?

ET: Ya.

RE: What happened to her?

ET: I don't want to talk about
it.

¶ 51 The obvious candidate for the antecedent of the pronoun "it" in "I don't want to talk about it" is the immediately preceding question:  "What happened to her?"  Thus, Tiedemann effectively stated:  "I don't want to talk about what happened to Suzie." We believe this to be the fairest interpretation of Tiedemann's statement.  But theoretically the antecedent of "it" may have been "The murders out there at West Valley," making Tiedemann's statement the equivalent of "I don't want to talk about the murders out there at West Valley."

¶ 52 Given this ambiguity as to the scope of Tiedemann's reinvocation of his right to remain silent, we believe the police officers were entitled to seek clarification. And we think the manner in which they did so was perfectly appropriate.  Sergeant Spann first asked, "What don't you want to talk about?" In response, Tiedemann stated, "I love that woman so much." Sergeant Spann again asked, "What is it that you don't want to talk about? You said murders in West Valley, where in West Valley?"  A discussion then followed regarding Tiedemann's address and the fact that "Suzie and Scotty and they just moved in last night."  Detective Edwards then again asked, "Okay, what don't you want to talk about?  Edgar?  What don't you want to talk about, Ed?"  After waiting for a reply for close to ten seconds, Sergeant Spann stated as follows:

Edgar, we're not going to force you [to] talk about anything.  We're asking you questions.

14

> As Detective Edwards stated, you
> can answer[] this question[], not answer
> that question, answer this question, not
> answer that question. You don't have to
> answer any of our questions at all. You
> can stop at anytime.

To this Tiedemann replied, "Okay." Sergeant
Spann added, "He made that clear to you,
right?" Tiedemann responded "Ya."

¶ 53 As we view the videotape, Tiedemann
was not denied the opportunity to clarify the
scope of his reinvocation of the right to
remain silent; rather, the officers gave him
multiple opportunities to clarify the scope
of his reinvocation. Further, the officers
emphasized to Tiedemann that he controlled
his right, that he could "answer this
question, not answer that question." The
officers were not deceptive, abusive, or
intimidating. Nor did they cut off
Tiedemann's opportunity to clarify his
reinvocation of his right to remain silent.
Despite this opportunity, at this point in
the interrogation, Tiedemann had
unambiguously asserted his right to remain
silent only as to Suzie, but not as to the
other victims. Therefore, while the officers
were precluded from asking about Suzie, they
were free to ask about the other victims.
¶ 54 Accordingly, we believe that
Detective Edwards was justified in posing the
question "Okay, we were called to your home
on a gunshot. We got in there and seen some
people. Who shot them?" Tiedemann could
have answered the question without reference
to Suzie, and the officers were entitled to
ask about the other victims. Tiedemann
stated, "Me," to which Detective Edwards
responded, "You did?" Tiedemann replied,
"Ya." Detective Edwards then asked, "Why did
you shoot them?" Again, Tiedemann could have
answered the question without reference to
Suzie, and the officers were entitled to ask
about the other victims. Instead Tiedemann
volunteered, "I shot Suzie cause I love her

15

and I shot the other two."

¶ 55 The interrogation then proceeded, and the officers asked questions specifically about Chuck and Debra.  They then asked another question that did not reference a particular victim: "Okay, why? Why did you shoot them?"  Tiedemann again volunteered information about Suzie:  "I shot Suzie cause I love her, I love her so much."  At this point in the interrogation, Detective Edwards asked Tiedemann two questions specifically about Suzie.  Further, at various points in the questioning that followed, the officers asked Tiedemann questions specifically about Suzie.  We would exclude all of Tiedemann's responses to such questions.  But we would allow Tiedemann's responses to all questions that were not specifically about Suzie and could have been answered as to the other victims without reference to Suzie.[38]

Evaluating against the federal habeas standard of review these relevant excerpts from the supreme court's opinion, the Court first notes that its review of United States Supreme Court case law, including that cited by the Utah Supreme Court in its opinion here, reveals the supreme court's careful adherence to appropriate federal precedent.[39]

---

[38]*Id.* ¶¶ 49-55 (footnote omitted).

[39]*See, e.g., Berghuis v. Thompkins,* 130 S. Ct. 2250, 2259 (2010) (In making its ruling on the admissibility of a statement made during custodial questioning, the trial court, of course, considers whether there is evidence to support the conclusion that, from the whole course of questioning, an express or implied waiver has been established."); *Davis v. United States*, 512 U.S. 452 (1994) ("[W]e are unwilling to create a third layer of prophylaxis to prevent police questioning when the suspect *might* want a lawyer.  Unless the suspect actually requests an attorney, questioning may continue." (emphasis in original)); *Smith v. Illinois*, 469 U.S. 91, 98 (1984) (per curiam) ("Invocation and waiver are entirely distinct inquiries, and the two must not be blurred by merging them together."); *Edwards v. Arizona*, 451 U.S. 477 (1981) ("[W]aivers of counsel must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case 'upon the particular facts and circumstances surrounding that case, including the background,

Second, the Court observes that the supreme court's appraisal of the transcript in tandem with the videotape of the confession,[40] and the factual findings it was able to make from that evidence, makes those findings untouchable by this Court. This Court has the written transcript available to read. However, the written transcript does not give the Court the chance to see the demeanor or hear the tone of voice of the interrogation's participants.  Any helpful nuances and clarifications that are necessarily provided by seeing and hearing are lost to the Court.  This is no doubt a big reason why "a determination of a factual issue made by a State court shall be presumed to be correct."[41]  And, Petitioner has in no way risen to the daunting burden he bears "of rebutting the presumption of correctness by clear and convincing evidence."[42]

Third, the Court is impressed by the lengthy and thorough treatment accorded Petitioner's *Miranda* argument by the Utah Supreme Court's majority opinion.[43]  The fact that there are two

---

experience, and conduct of the accused.'"); *Michigan v. Mosley*, 423 U.S. 96, 106 (1975) ("This is not a case . . . where the police failed to honor a decision of a person in custody to cut off questioning, either by refusing to discontinue the interrogation upon request or by persisting in repeated efforts to wear down his resistance and change his mind."); *Miranda v. Arizona*, 384 U.S. 436 (1966) ("Our aim is to assure that the individual's right to choose between silence and speech remains unfettered throughout the interrogation process.").

[40]*Tiedemann*, 2007 UT 49, ¶ 53.

[41]28 U.S.C.S. § 2254(e)(1) (2012).

[42]*Id.*

[43]*Tiedemann*, 2007 UT 49, ¶¶ 48-55.

well-reasoned dissents shows the care with which the justices treated the issue.  This goes to the requirement that a state-court ruling be overturned by a federal court only when no possibility exists that "fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents."[44]  Here, three impressively thoughtful analyses on the issue of Petitioner's *Miranda* rights were written by Utah Supreme Court justices.[45]  It seems clear from this that "fairminded jurists" *can* most assuredly disagree on the application of Supreme Court precedent to this set of facts.

This, together with its review of Supreme Court precedent and its deference to the Utah Supreme Court's factual findings, persuades this Court that Petitioner's arguments regarding the voluntariness of his confession do not clear the formidable hurdle presented by the federal statutory habeas standard of review--a standard that Plaintiff completely ignores.  He merely insists, without analysis, that his constitutional rights were violated, an argument that does not even being to approach his heavy burden here.  In sum, this Court can find no hint that the Utah Supreme Court was unreasonable in its determination that Petitioner's confession was voluntary and therefore admissible.

---

[44]*Harrington*, 131 S. Ct. at 785.

[45]*Tiedemann*, 2007 UT 49, ¶ 13.

## CONCLUSION

The following of Petitioner's challenges are procedurally barred: (1) a *Miranda* violation occurred when a portion of his interrogation was not recorded; (2) a juror should have been excluded for cause; (3) his request for an attorney was ignored; (4) ineffective assistance of counsel; and (5) the destruction of evidence violated his due-process rights. Petitioner's other challenge based on the voluntariness of his confession raises no valid ground for federal habeas relief.

IT IS THEREFORE ORDERED that the State's motion to dismiss is GRANTED.[46]

IT IS FURTHER ORDERED that Petition has thirty days in which to respond, with a motion to reconsider, to the Court's dismissal (on the basis of procedural default) of issue five.

DATED this 1st day of October, 2012.

BY THE COURT:

CLARK WADDOUPS
United States District Judge

---

[46](*See* Docket Entry # 17.)

19